**Merlin KLEIN, Relator,**

v.

**BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 671, HILLS–BEAVER CREEK, Minnesota, Respondent.**

**No. C5–92–1859.**

Court of Appeals of Minnesota.

March 16, 1993.

Review Granted May 18, 1993.

Dale G. Swanson, Forest Lake, for relator.

Kevin J. Rupp, Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and CRIPPEN and AMUNDSON, JJ.

## OPINION

CRIPPEN, Judge.

Relator was the elementary principal for Independent School District No. 671, Hills–Beaver Creek, Minnesota. The school district restructured their administrative positions and placed relator on unrequested leave of absence from his position as principal. The principal position was reduced to half-time, combined with a half-time superintendent position, and filled by a person with less seniority than relator. Relator claims the school board wrongfully deprived him of his statutory right to continue his service as principal at least half-time. We reverse and remand.

## FACTS

Relator Merlin Klein was first employed by Independent School District No. 671, Hills–Beaver Creek, in 1967 as an elementary principal. By the commencement of this proceeding, he had served for 25 years in that capacity.

In January 1992, respondent school board adopted resolutions discontinuing the position of elementary principal and discharging Klein by placing him on unrequested leave of absence. Klein requested a hearing pursuant to Minn.Stat. § 125.12,

subd. 4 (Supp.1991), over the proposal that he be discharged from a tenurial position.

In April 1992, the school board adopted a resolution reducing the elementary principal position to half-time and combining that position with a half-time superintendent position. This newly created position was filled by Robert Dell, the full-time superintendent. Dell had been employed by the district since July 1989 and had less seniority than Klein.

Following a hearing in June 1992, the hearing examiner found that the procedures of Minn.Stat. § 125.12 (1990) had been followed, and that the restructuring of positions and relator's placement on unrequested leave of absence were authorized by Minn.Stat. § 125.12, subd. 6b (Supp. 1991) (governing use of leave), and *Buys v. Independent Sch. Dist. No. 891*, 398 N.W.2d 622 (Minn.App.1986), *pet. for rev. denied* (Minn. Mar. 13, 1987). The examiner recommended that relator be placed on unrequested leave of absence. The school board later passed resolutions adopting the hearing examiner's findings, conclusions and recommendations. The board then recalled relator for the 1992–93 school year to a full-time elementary teaching position. Relator argues that this demotion cripples his "High–Five" TRA retirement formula and causes him to forfeit over $12,000 in severance pay entitlement he was about to earn under the Principals' Association Contract. Relator seeks review of the school board's decision by writ of certiorari.

## ISSUE

Did the school district err in failing to honor the principal's continuing contract rights in its attempt to assign a less senior person to a newly created position as half-time elementary principal and half-time superintendent?

## ANALYSIS

On appeal, a reviewing court may set aside a school board's determination only if it is

fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the board's jurisdiction or is based on an erroneous theory of law.

*Ganyo v. Independent Sch. Dist. No. 832*, 311 N.W.2d 497, 500 (Minn.1981).

Relator Merlin Klein was a tenured principal in Independent School District No. 671. Under Minnesota's statutory scheme, a continuing contract employee has various rights: the right to continue in one's present job, the right to bump junior staff if one's position is eliminated, and the right to have the school board make a reasonable realignment of positions so that one can displace a less senior employee. Primary among these is the right to keep one's current job, which includes the freedom from being bumped by a junior staff person. It is this right that relator is asserting in this appeal. Minnesota's teacher tenure laws, the supreme court has determined, must be construed liberally to benefit the public by protecting proven school employees. *McSherry v. City of St. Paul*, 202 Minn. 102, 111, 277 N.W. 541, 546 (1938).

In placing relator on an unrequested leave of absence, the school board's discretion is limited by Minn.Stat. § 125.12, subd. 6b(b) (Supp.1991), which provides in relevant part:

> Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by the school district.[1]

The school board suggests that this case is unique. Although no other person can take the principal's job because of his continuing contract rights, the board argues it has the right to take his job in order to hire a part-time superintendent.

The board of district 671 is attempting to restructure their administrative positions under Minn.Stat. § 123.34,

1. Minn.Stat. § 125.12, subd. 1 (1990), defines "teacher" to include a principal for purposes of continuing contract law, under all the provisions of section 125.12.

subd. 9 (Supp.1991), which provides in relevant part:

> The authority for selection and employment of a superintendent shall be vested in the school board in all cases.

But the limited scope of this board authority is a settled matter of law. Under the governing statutes, the board does not have the power, when assigning a less senior person to the half-time superintendent position, to abrogate relator's continuing contract rights. In *Grinolds v. Independent Sch. Dist. No. 597*, 346 N.W.2d 123 (Minn.1984), the Minnesota Supreme Court discussed the legislative history behind the enactment of section 123.34, subdivision 9. The court stated:

> Section 123.34 was not enacted to tamper in any way with the tenure or continuing contract laws. Section 123.34 simply attempted to remove the superintendent's position from the seniority laws so that a more senior principal or administrative person, licensed to be a superintendent, could not "bump" a superintendent from his or her position when that principal or administrative person was placed on unrequested leave of absence from his or her job.

*Id.* at 127. As thus recognized in *Grinolds*, section 123.34 constitutes a shield to prevent the bumping of a superintendent from his or her job by another person with greater seniority and proper licensure when that person was placed on unrequested leave of absence, but the statute is not properly used as a sword, depriving persons such as relator of their continuing contract rights.

We note that the school board claims a reversal in this case creates difficulties for a number of Minnesota school boards. Under pertinent regulations, two-thirds of the superintendent's time may have to be assigned in administrative work, even if the superintendency is reduced to a smaller block of time. But these regulations retain the freedom of boards to assign one-third of the superintendent's time in either a teaching or administrative position. As a matter of seniority, superintendents may in some cases be permitted to bump a teacher or administrator with less seniority. Where a reassignment cannot occur, job sharing with other districts remains an option. We recognize that choices like these may not be helpful for all boards, and that as a result, some may find it necessary to engage in other cost-cutting measures or even in school consolidation. But in these circumstances, like many others, the board is not free to enlarge its options by disregarding statutory mandates on staff tenure.

We also appreciate policy concerns that contradict the board's arguments. Upholding the district 671 board would allow repeated displacement of tenured employees—people who, unlike the school board, have no voice in deciding the issues and no means to avoid the consequences of losing their jobs. The legislature deems this option detrimental to the public interest in good schools. While observing these considerations, debated during this litigation, we add that our decision does not rest on policy grounds. We base our holding on our reading of the plain language of the statute, confirmed by the supreme court's decision in *Grinolds*. Any policy prerogatives in this area rest with the legislature.

Respondent argues that this court's decision in *Buys v. Independent Sch. Dist. No. 891*, 398 N.W.2d 622 (Minn.App.1986), *pet. for rev. denied* (Minn. Mar. 13, 1987), requires affirming the school board's decision. In that case, a superintendent's assignment displaced the job of a secondary principal. Buys, who was the elementary principal, lost his employment because of the secondary principal's bumping rights. The case did not examine the issue of whether the superintendent had seniority rights over the secondary principal. The opinion also did not discuss the conflict between tenure rights and the board's power to assign part-time positions. Because Buys was properly bumped by a senior administrator, the *Buys* court treated his argument solely as one for realignment, the limited right of a continuing-contract employee to have staff assignments rearranged so that the tenured employee can preserve a position or take another in preference to a junior staff member. The

board could have made other arrangements to save Buys's job. Using realignment analysis, the court concluded the board properly considered alternatives, and it declined to reverse the board's decision. The issue did not require, and the court did not offer, a discussion of the conflict confronted in this case.

Relator contends that his relief should include restoration to the position of full-time principal. He argues that the school board illegally abolished the elementary principal position before it restored the position half-time. It is evident that the substance of the board's actions was to eliminate the full-time position in favor of a half-time position. Thus, the school board did not act improperly.

Also, there is no merit to the argument that the school board inadequately assessed its choices in decreasing the position to half-time. We find that they properly considered the choices available and chose the one that seemed most reasonable to them. Relator is entitled to the restoration of the remaining part of his position as principal.

## DECISION

The school board erred in placing relator on unrequested leave of absence in order to replace him with a less senior administrator in a newly created position. Relator is entitled to the restoration of the remaining half-time principal position.

Reversed and remanded.

DAVIES, Judge (dissenting).

I respectfully dissent.

Approaching this case from the principal's point of view, as the majority does, leads inevitably to the conclusion that it was improper to place Klein on unrequested leave. But if the problem is approached from the point of view of the "superintendency," the opposite result seems necessary.

Stated otherwise, if the issue is whether the school board may shape the job of the superintendent to fit the financial constraints facing the district, what the board did here is permissible. And a board must be free to fill the superintendent's job with such other responsibilities as the board feels appropriate. Further, a small district board must usually round out a part-time superintendent's job with responsibilities as a principal. Otherwise, the superintendent does not fill two-thirds of his time with administrative responsibilities, as required by Minn.R. 3500.0600, subp. 2. The Hills/Beaver Creek District, therefore, reasonably chose to assign Superintendent Robert Dell to a half-time principalship. That part-time principalship could not be at the high school because that job, combined with the superintendency, would have been more than one person could handle.

So, the school board turned to the elementary principalship, making it necessary to displace relator Merlin Klein. Klein, once displaced from the elementary principalship, had bumping rights for the secondary principalship. But he was not certified for that position because of his career-long work in the elementary grades. Thus, although he had bumping rights to the high school principalship, he did not qualify for that position and was forced, instead, to bump a classroom teacher.

I think a school board must be left free, so long as it has no ulterior motive, to shape the superintendency as it chooses. Klein's job was legitimately abolished and his tenure rights are fully vindicated by his right to bump an elementary teacher of less seniority.

I would affirm the school board.